Robert L. DANIELS, Plaintiff,

v.

CHANUTE AIR FORCE BASE EX-
CHANGE, Army and Air Force Ex-
change Service, and the United States
of America, Defendants.

Civ. No. 1267–D.

United States District Court,
E. D. Illinois.

Jan. 14, 1955.

John Alan Appleman, Urbana, Ill., for
plaintiff.

Clifford M. Raemer, U. S. Atty., Salem,
and John Morton Jones, Asst. U. S. Atty.,
Danville, Ill., for defendants.

PLATT, District Judge.

The defendant, the United States of
America, by the United States Attorney,
presents a motion to dismiss the com-
plaint for the following reasons:

1. It fails to state a claim upon which
relief can be granted;

2. The plaintiff lacks jurisdiction
over all the defendants;

3. No defendant has consented to be
sued;

4. The United States was not and is
not the employer of any person or agency
which is alleged to have negligently
caused injury to the plaintiff.

The United States also argues that
Public Law 397 of the 82nd Congress,
Title 5 U.S.C.A. § 150k–1 provides that
the Army and Air Force Exchange Serv-
ice may obtain, for its employees, com-

pensation insurance for death or disability incurred in course of employment, and this remedy is exclusive. The United States Attorney, by amendment, joined the Chanute Air Force Base Exchange and Air Force Exchange Service as parties to the motion to dismiss.

The plaintiff, a civilian employee of Chanute Air Force Base Exchange, brought this action under the Federal Tort Claims Act, Title 28 U.S.C.A. § 2671 et seq., against the three defendants to recover for personal injuries received in the course of employment as result of the negligence of defendants.

■ At the outset in determining the validity of the motion it must be borne in mind that a complaint is not subject to dismissal unless it appears to a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of the allegations. Chicago & Northwestern R. v. First National Bank of Waukegan, 7 Cir., 200 F.2d 383. This court[1] is not deciding that plaintiff has a claim upon which relief can be granted for the reason this cannot be ascertained until proof is made.

The defendants in their argument maintain that a post exchange is not an agency of the United States and this suit does not come within the meaning of the Tort Claims Act. Section 2671, Title 28 U.S.C.A., defines "Federal agency" as the executive departments, independent establishments and instrumentalities of the United States. " 'Employee of the government' " includes members of the military or naval forces of the United States. An officer of the armed forces is usually in executive control of an exchange.[2] These definitions would include an exchange as a "Federal agency" and the officer in charge as an "employee" of the government.

■ This court believes that the case of Standard Oil Co. v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611, is decisive in holding that the Army Exchange is an instrumentality of the United States. The State of California imposed a license tax measured by gallonage on the privilege of distributing motor vehicle fuel. By the State Act the tax was to be inapplicable "to any motor vehicle fuel sold to the government of the United States or any department thereof for official use of said government". St.1923 Cal. p. 571 et seq., § 10, as amended by St.1927 Cal. p. 1309. A distributor sold gasoline to an Army Post Exchange in California and was required to pay the tax. The Supreme Court of California [218 Cal. 126, 22 P.2d 3] held that the exchange was not the "government of the United States or any department thereof", basing its decision on the relationship between the exchange and the United States Government. The United States Supreme Court held that whether exchanges are the "government of the United States or any department thereof" was a federal question. The California Supreme Court was reversed and in the decision the Supreme Court described the status of exchanges saying [316 U.S. 481, 62 S.Ct. 1169]:

"On July 25, 1895, the Secretary of War, under authority of Congressional enactments promulgated regulations providing for the establishment of post exchanges. These regulations have since been amended from time to time and the exchange has become a regular feature of Army posts. That the establish-

---

1. Title 28, U.S.C.A. § 1346(b).

" * * * the district courts * * *, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. AR 60–10, AFR 147–7, par. 21.
"Civilian Personnel: a. So far as practicable, exchanges will be staffed with civilian employees with Army and Air Force officers in executive control.

ment and control of post exchanges have been in accordance with regulations rather than specific statutory directions does not alter their status, for authorized War Department regulations have the force of law.

\* \* \* \* \* \*

"The commanding officer of an Army Post, subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange. He details a post exchange officer to manage its affairs. This officer and the commanding officers of the various company units make up a council which supervises exchange activities. None of these officers receives any compensation other than his regular salary. The object of the exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges. The government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. They are used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops.

"From all of this, we conclude that post exchanges as now operated are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes. In concluding otherwise the Supreme Court of California was in error."

It is obvious in the Johnson case that the Supreme Court recognized the issue as to whether or not under federal law an exchange was a "Federal agency." It concluded that gas sold to exchanges was not subject to tax because under federal law exchanges are " 'the government of the United States or any department thereof.' " Its decision was not based on the ground that such a tax would be a burden to the federal government, thus distinguishable here on the ground that exchanges are "Federal agencies" only for the purpose of taxation. While it was argued that if the California Act required exchanges to pay such a tax, the Act would be unconstitutional as a burden upon the United States, the court made it clear that its decision was not based upon this ground saying:

"Whether the California Supreme Court would have construed the Motor Vehicle Fuel License Act as applicable to post exchanges if it had decided the issue of legal status of post exchanges in accordance with this opinion, we have no way of knowing. Hence, a determination here of the constitutionality of such an application of the Act is not called for by the state of the record."

This case together with the definitions set out in said Section 2671 clearly shows that an exchange is a "Federal agency" and therefore the United States is subject to suit under the Tort Claims Act.

While the decision of the Supreme Court needs no support it has been held that post exchanges are "Federal agencies" in other cases. In United States v. Query, D.C., 37 F.Supp. 972, affirmed 4 Cir., 121 F.2d 631, the court held a post exchange was a "federal instrumentality" and not subject to a South Carolina license tax. In Borden v. United States, 116 F.Supp. 873, 126 Ct.Cl. 902, it was held that the United States could not be sued on a contract of employment signed by the Army Exchange Service since it was an agency of the United States under

the holding in the Johnson case, and could not be sued on a contract without its consent. In Edelstein v. South Post Officers Club, D.C., 118 F.Supp. 40, an Army Officers Club was sued for breach of contract and the court held: "This action must be dismissed as a suit against an agency of the United States to which the United States has not consented."

The government has relied heavily upon two cases: Faleni v. United States, D.C., 125 F.Supp. 630, and Keane v. United States, 4 Cir., 272 F. 577. In the Faleni case the plaintiff was a civilian employee of the Ship Service Department, the navy equivalent of post exchange. She alleged injury as result of negligence of an employee of the United States, and sued the United States under the Federal Tort Claims Act. The government filed a motion to dismiss taking the position (contrary to its position in the instant case) that the plaintiff was an employee of an instrumentality or agency of the United States and her only resort was to the Workmen's Compensation Insurance procured by the Ship Service. The district court denied the government's motion to dismiss, holding that the plaintiff was not an employee of the United States, the Ship Service not being a "Federal agency." The Johnson case was interpreted as standing only for the proposition that instrumentalities of the government cannot be taxed by the States. The court also relied upon the fact that the plaintiff was not paid from government appropriated funds, because the Ship Service pays its own obligations and carries its own insurance. In the Johnson case, 316 U.S. at page 484, 62 S.Ct. at page 1170, the court refutes this statement:

"Congressional recognition that the activities of post exchanges are governmental has been frequent. Since 1903, Congress has repeatedly made substantial appropriations to be expended under the direction of the Secretary of War for construction, equipment, and maintenance of suitable buildings for post exchanges. In 1933 and 1934, Congress ordered certain moneys derived from disbanded exchanges to be handed over to the Federal Treasury."

Present regulations[3] have not changed the status of exchanges, but have recognized they are instrumentalities of the government.

---

3. AR 60–10, AFR 147–7, July 29, 1954.
  "Par. 1. Applicability: a. These regulations govern the establishment and operation of exchange service within the Departments of the Army and the Air Force.
  "Par. 2. Establishment: a. Exchange service is the making available to authorized patrons merchandise and services of necessity and convenience not furnished by the Government, through a Government instrumentality identified as an exchange.
  "b. Exchanges are created and administered pursuant to regulations of the Secretaries of the Army and the Air Force to provide authorized services at uniformly low prices consistent with reasonable profits to supplement appropriated funds provided for the support of welfare and recreational programs for military personnel. They are revenue-producing activities financed by nonappropriated funds. * * *"
  "Par. 10. Structures and Other Real Property. It is the intent of the Departments of the Army and the Air Force to provide and maintain, from appropriated funds, suitable facilities for exchange activities."
  "Par. 26. Legal Advice. Installation commanders are entitled to the legal advice or services of the local United States attorney to protect the rights and interest of the exchange."
  "Par. 32. Penalty Envelopes. Penalty envelopes will be used for correspondence pertaining to exchange business only. The furnishing of penalty envelopes for return replies is prohibited."
  "Par. 33. Communications Systems. Messages on exchange business may be transmitted without charge over telegraph, radio, and cable lines owned and operated by the Departments of the Army and the Air Force. Telephone and telegraph messages sent by exchanges which relate to exchange business, and which are transmitted by commercial communications companies, will be at Government rates wherever possible."

Therefore, this court does not agree with the Faleni case. In Keane v. United States, supra, the court held a conspiracy to defraud a post exchange was not a conspiracy to defraud the United States. This case was decided prior to the Johnson case, and there is a strong dissenting opinion with which this court is in accord.

■■■■ The last point made by the government is whether the fact that such exchanges have provided their employees with coverage in the nature of Workmen's Compensation Insurance is an exclusive remedy and a bar to this suit. This defense is not raised by a motion to dismiss. Section 150k–1, Title 5 U.S.C.A. does authorize the exchange to purchase compensation for employees. At this stage of the proceeding this court has no knowledge as to whether or not the exchange carried Workmen's Compensation Insurance. The purpose[4] of this legislation in the light of the Johnson case was to make it clear that the employees of the exchange were not to be covered by the Civil Service Act, or the provisions of the Federal Employees Compensation Act, 5 U.S.C.A. § 751 et seq. At the same time Congress did not declare that if compensation insurance was carried by the exchange it was an exclusive remedy. In the case of United States v. Brown, 75 S.Ct. 141, 143, plaintiff brought an action under the Federal Tort Claims Act for damages for negligent treatment in a Veterans Administration Hospital, after he had received compensation award under the Veterans Act, 48 Stat. 526, 38 U.S.C.A. § 501a. The government claimed that Plaintiff's sole relief was under the Veterans Act. The Supreme Court said:

"Congress, could, of course, make the compensation system the exclusive remedy. The Court held

in Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051, that Congress had done so in the case of the Federal Employees' Compensation Act, * * * with the result that a civilian employee could not sue the United States under the Public Vessels Act. * * We noted in the Brooks case [Brooks v. U. S.], 337 U.S. 49, 53, 69 S.Ct. 918, 920 [93 L.Ed. 1200], that the usual workmen's compensation statute was in this respect different from those governing veterans, that Congress had given no indication that it made the right to compensation the veteran's exclusive remedy, that the receipt of disability payments under the Veterans Act was not an election of remedies and did not preclude recovery under the Tort Claims Act but only reduced the amount of any judgment under the latter Act. We adhere to that result. * * *"

If it should develop that the Exchange Services in this case carried compensation insurance, said Section 150k–1 would not exclude the remedy under the Tort Claims Act.

■■■■ This leaves the question to be determined as to whether or not the defendants Chanute Air Force Base Exchange and Army Air Force Exchange Service should be dismissed. Plaintiff alleges jurisdiction under the Federal Tort Claims Act. He does not allege as to whether those defendants are individuals, associations, partnerships, or corporations. At this time the action against the exchanges must be dismissed.[5]

For the reasons stated the motion to dismiss is allowed as to the two defendants Chanute Air Force Base Exchange and Air Force Exchange Service, and

---

4. U.S.Code Congressional and Administrative News, 82nd Congress, 2nd Session, 1952, House Report 1995, p. 1520.

5. See Title 28, U.S.C.A. §§ 2676, 2679; Prechtl v. United States, D.C., 84 F. Supp. 889; Brandt v. United States,

D.C., 110 F.Supp. 627; Gilman v. United States, 9 Cir., 206 F.2d 846, affirmed 347 U.S. 507, 74 S.Ct. 703, 98 L.Ed. 898; Moon v. Price, 5 Cir., 213 F.2d 794, and United States v. First Sec. Bank of Utah, 10 Cir., 208 F.2d 424.

denied as to the United States of America.

The plaintiff is granted 30 days to file amendment to complaint, and the defendant the United States is granted 30 days to file answer herein.